UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| DARYL SCHEETZ,<br><br>    Plaintiff,<br><br> vs.<br><br>CRYSTAL VAN VOOREN, Major Special Security, in her individual and official capacity; and HUNTER SUMMERS, Lieutenant Special Security, in his individual and official capacity,<br><br>    Defendants. | CIV. 13-4144-KES<br><br><br>ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE IN PART |

Plaintiff, Daryl Scheetz, moves to strike the affidavit of defendant Hunter Summers dated September 13, 2017, including all attached exhibits and for other appropriate Rule 37 sanctions. Docket 113. Defendants, Crystal Van Vooren and Hunter Summers, oppose the motion. Docket 122.

**FACTUAL BACKGROUND**

Plaintiff's amended complaint alleges that defendants retaliated against him for exercising his First Amendment rights by restricting plaintiff's visitation to Class II visitation. Docket 66. Defendants maintain that plaintiff's visitation was restricted because he was under investigation for smuggling contraband into the prison with another prisoner, Nathaniel Hayes. On February 27, 2017, defendants responded to plaintiff's interrogatories and requests for production. Plaintiff's interrogatories asked defendants to identify correspondence,

information, reports and documents relied upon in placing Scheetz on Class II visitation status. Docket 115-12 at 7-8. In response, Summers identified Leeland Tjeerdsma's affidavit (Docket 41-16) and his own September 25, 2015, affidavit (Docket 75-1). Docket 115-12 at 7-8. Summers was further asked to identify the basis for statements made in his September 2015 affidavit and specifically to identify any exhibits he intended to introduce at trial. Docket 115-12 at 7. In response, he identified an Administrative Detention Order (Docket 41-1), Scheetz's Judgment of Conviction (Docket 41-15), the South Dakota Board of Pardons and Paroles Violation Report (Docket 75-7), and Scheetz's Request for Administrative Remedy (Docket 75-16). Docket 115-12 at 7.

In addition, plaintiff served sixteen requests for production on Summers. In response to the requests for production, Summers produced three documents entitled Attachments A, B, and C. Attachment A is an email thread from April 18, 2013, between Summers and Van Vooren. Docket 115-12 at 12. Attachment B is a disciplinary report documenting charges made against Nathaniel Hayes. *Id.* at 13. And Attachment C is a Confidential Informant Report drafted by Summers regarding information on Hayes. *Id.* at 14. On June 30, 2017, this court granted Scheetz leave to extend discovery and take six depositions. Docket 107. The depositions of defendants Van Vooren and Summers were set for July 19, 2017. On July 13, 2017, Scheetz sent a letter to defendants requesting that defendants produce an email to which Warden Dooley referred to in paragraphs 8 and 9 of his September 17, 2015 affidavit.

2

Docket 115-3 at 2. Scheetz also asked that the defendants review the docket and produce "all documents that should be produced pursuant to Rule 26." *Id.* Defendants responded to the letter stating that the email referred to by Dooley could not be located, and defendants did not produce any additional documents. Docket 115-4 at 3-4.

During Summers' deposition, he was questioned about his efforts to locate emails related to Scheetz. *See* Docket 115-1 at 14. Scheetz's counsel asked, "Are there other emails between you and Miss Van Vooren about the Hayes investigation that you haven't produced in this case?" *Id.* Summers responded, "No." *Id.* Scheetz's counsel also questioned Van Vooren as to whether there was any other responsive email correspondence and she denied that there was. *See* Docket 115-2 at 3-4, 6-7.

On July 25, 2017, during Leland Tjeerdsma's deposition, defendants provided Scheetz with an email from Tjeerdsma to Summers regarding the 2012 investigation of Scheetz smuggling contraband with a correctional officer. Docket 115-10 at 4. Van Vooren was also included on the email, but neither defendant had produced the email until after their depositions. On August 17, 2017, defendants produced eight pages of emails from Tjeerdsma[1] that had been sent to DOC counsel Ashley McDonald on August 26, 2014. Docket 115-10. Also on August 17, 2017, defendants produced, for the first time, 78 pages of documents including: a May 7, 2013 email; a May 10, 2013 email; a November 5, 2013 email; a November 6, 2013 email; an Administrative

---

[1] The court will refer to this group of emails as the "Tjeerdsma emails."

Detention Order dated November 1, 2016, and a November 1, 2016 email from Lee Kaufenberg.[2] Summers now offers those documents in his September 13, 2017 affidavit. Docket 111. Because defendants disclosed the documents after the defendants' July 19, 2017 depositions, Scheetz's counsel was unable to depose the defendants about the contents of the documents.

On July 26, 2017, Scheetz served a subpoena for a Rule 30(b)(6) deposition and subpoena duces tecum to the South Dakota Department of Corrections (DOC) and set the date for the deposition and production on August 17, 2017. Docket 115-5. The notice of deposition identified ten subject areas the deponent should be prepared to address. *Id.* at 6. The notice also identified sixteen categories of documents that the DOC should produce. *Id.* at 8. Scheetz alleges that the DOC did not produce a witness who was knowledgeable about three of the topics[3] and instead produced an affidavit

---

[2] The court will refer to this group of documents as the "Summers Affidavit documents."

[3] The three topics Scheetz alleges that the Rule 30(b)(6) witness could not testify to read as follows:

> 7. All efforts undertaken by the Department of Corrections to identify and produce responsive information to outstanding discovery requests from Plaintiff, including the scope of the information reviewed, the custodian of information interviewed or consulted, and the nature of the effort made to locate information within the Department's custody, possession, or control.
>
> 8. All efforts undertaken by the Department of Corrections to identify and produce responsive information to the list of topics identified in Exhibit B, including the scope of the information reviewed, the custodians of information interviewed or consulted, and the nature of the effort made to locate information within the department's custody, possession, or control.

4

from an attorney with the South Dakota Attorney General Office that outlined the search terms used to search the email database. *See* Docket 115-14. The attorney's affidavit described the process by which the DOC searched its emails. *Id.* He conducted the initial inquiry of the mailboxes of Warden Robert Dooley, Van Vooren, and Steve Baker on July 25, 2017, using the terms "Scheetz AND Visitation." *Id.* at 4. He performed the second search of the mailboxes of Van Vooren, Art Allcock, Summers, Bob Dooley, Denny Kaemingk, Clifton Fantroy, Steve Baker, Troy Ponto, and Darin Young on August 11 and 14 of 2017. *Id.* at 5. The second search used the terms "Scheetz AND visit," "Scheetz AND Visitation," and "Scheetz AND parole." *Id.* The affidavit states that, in total, the searches produced 548 results. *Id.*

Scheetz now moves this court for the following: (1) to dismiss the defendants' renewed motion for summary judgment (Docket 109) because it is based on evidence that was not timely disclosed; (2) to award Scheetz reasonable attorney's fees for time spent on addressing the lack of production with defendants' counsel, preparing for the Rule 30(b)(6) witness deposition, drafting and preparing this motion to strike (Docket 113), and drafting and preparing a response to the defendants' renewed motion for summary

---

> 9. All efforts undertaken by the Department of Corrections to identify and produce information that relates to the claims and defenses set out in the Department of Correction's responsive pleading, including the scope of the information that was reviewed, the custodians of information interviewed or consulted, and the nature of the effort made to locate information within the Department's custody, possession, or control.

Docket 115-5 at 6-7.

judgment; (3) to inform the jury of defendants' failure to timely produce responsive documents through an adverse jury instruction; and (4) to preclude defendants from offering, referring to, testifying, or otherwise relying on all untimely-disclosed documents for any purpose other than impeachment.

## DISCUSSION

I. **The untimely disclosure of the Tjeerdsma emails and the Summers Affidavit documents**

Federal Rule of Civil Procedure 26(a)(1)(A)(ii) requires parties to make initial disclosures including "a copy—or a description—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). If a party fails to satisfy an initial or supplemental disclosure, the court has discretion to apply appropriate sanctions—unless the nondisclosure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). An untimely disclosure is considered a nondisclosure. *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998). The Eighth Circuit applies a four-part balancing test to determine whether a failure to disclose is substantially justified or harmless and to fashion an appropriate remedy. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). The balancing test considers "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Id.*

### A. Whether defendants' untimely disclosure of the Tjeerdsma emails and the Summers Affidavit documents was substantially justified

Defendants argue that they failed to disclose the Tjeerdsma emails and Summers Affidavit documents in a timely manner because they did not know the emails existed. Docket 122 at 2. To determine whether a party's untimely disclosure is justified, the court evaluates the availability of the evidence, the party's knowledge of the relevancy of the evidence, and whether the party ever moved the court for additional time to gather the evidence. *See Trost*, 162 F.3d at 1008; *Wegener*, 527 F.3d at 692-93; *Carmondy v. Kan. City Bd. of Police Comm'rs*, 713 F.3d 401, 405 (8th Cir. 2013).

In *Transclean Corp. v. Bridgewood Services, Inc.*, 101 F.Supp.2d 788, 795 (D. Minn. 2000), the defendant produced an untimely supplemental expert report. The defendant argued that the untimeliness of the report was substantially justified because the supplemental report responded to a later filed affidavit that "created a brand new theory and explanation from anything set forth previously." *Id.* at 796. The district court found that the untimeliness of the supplemental report was not justified because the defendant had the opportunity to discover the "brand new theory" when it deposed the affiant. *Id.* The defendant further argued that the affiant was not forthcoming during his deposition but failed to point to a question that, if answered, would have led the defendant to the "brand new theory." *Id.* The defendant simply did not ask the relevant questions at the deposition. *Id.*

7

Similarly, in *Wegener* the plaintiff produced an untimely supplemental expert report and argued that it was substantially justified because it was in response to the defense's expert report. *Wegener*, 527 F.3d at 692. But the court reasoned that the plaintiff's expert report was "based on hospital records that were easily discoverable" and "patently relevant to [the plaintiff's] case" and which had been subpoenaed by defense counsel five months before the disclosure deadline. *Id.* at 693. Thus, the plaintiff's lack of due diligence in reviewing relevant discovery did not substantially justify the untimely disclosure. *Id.*

Here, defendants argue that their untimely disclosure of the relevant documents is substantially justified because they did not know about the documents prior to their disclosure. But the Tjeerdsma emails were sent by Tjeerdsma to DOC counsel on August 26, 2014. Docket 115-10 at 2. Defendants produced one of the emails on July 25, 2017, and did not produce the rest of the emails until August 17, 2017. Thus, defendants' untimely disclosure of the Tjeerdsma emails is not substantially justified because DOC counsel knew of and maintained possession of the emails for nearly three years before disclosing them.

As to the Summers Affidavit documents, the documents are responsive to the interrogatories and requests for production that were sent by Scheetz in January 2017 and should have been produced at that time. Similar to the situations in *Transclean* and *Wegener*, the discovery was readily available in January when Scheetz served his interrogatories, and the defendants knew

that emails between prison officials regarding Scheetz could be relevant to this litigation. Defendants simply failed in their due diligence in responding the Scheetz's discovery requests. Also, defendants do not provide any explanation as to why the Administrative Detention Order (Docket 111-7) was not produced until August 17, 2017. Thus, the court finds that defendants failed to show a substantial justification for the untimely disclosure of the Summers Affidavit documents.

### B. Whether defendants' untimely disclosure is harmless

Defendants argue that Scheetz was not prejudiced by the late disclosure of the documents because he relies on them in his response[4] to defendants' motion for summary judgment and did not object to the late disclosure at the time they were disclosed. Docket. 122 at 8. When considering whether a failure to disclose was harmless, the court considers "the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of trial, and the importance of the information." *Wegener*, 527 F.3d at 692.

The court finds that failure to disclose in this case is not harmless because Scheetz was unable to depose the defendants regarding the information contained in the documents, the discovery deadline has passed, and the trial date is currently less than one month away. Summers relies on many of the emails in his affidavit in support of his renewed motion for

---

[4] Defendants rely on the untimely disclosed documents in their second motion for summary judgment, so Scheetz had to address the documents in his response to the second motion for summary judgment. Also, Scheetz now objects to the late disclosure of the documents by filing this motion to strike.

9

summary judgment, but Scheetz was unable to depose Summers about the very emails he now so heavily relies on. Further, some of the emails contradict prior sworn testimony. For example, a July 12, 2012 email seems to contradict Summers' prior sworn testimony that Special Security Staff at the SDSP were not aware of the contraband investigation involving Scheetz and a correctional officer. *See* Docket 75-1 ¶¶ 24-25; Docket 115-10 at 4. Because the discovery deadline has passed and the trial date is quickly approaching, plaintiff would not have the opportunity to further depose the defendants about these documents without continuing the trial and reopening discovery. Thus, the failure to disclose is not harmless.

## II. Defendants failure to designate a 30(b)(6) witness

Under Federal Rule of Civil Procedure 30(b)(6) "a party may name . . . a governmental agency . . . and must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The agency must then designate one or more persons to then "testify about information known or reasonably available to the organization." *Id.* "[T]he effectiveness of the Rule bears heavily upon the parties' reciprocal obligations." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000). "Thus, the requesting party must reasonably particularize the subjects about which it wishes to inquire, and the responding party 'is obligated to produce a deponent who has been suitably prepared to respond to questioning within the scope of inquiry.' " *Dwelly v. Yamaha Motor Corp.*, 214 F.R.D. 537, 540 (D. Minn. 2003) (quoting *Prokosch*, 193 F.R.D. at 638)).

10

In response to Scheetz's subpoena for a Rule 30(b)(6) deposition to the DOC, the DOC designated Kim Edson and Jennifer Dreiske. Docket 115-5 at 2; Docket 115-14. Because defendants have not asserted that Scheetz did not reasonably particularize the subjects he requested, the defendants were required to produce a deponent to testify to the identified subject areas. Scheetz argues that neither Edson nor Dreiske were unable to testify to the DOC's efforts in searching for responsive information to outstanding discovery requests which was contained in subjects 6-8 in the subpoena (Docket 115-10 at 6-7), and instead, the DOC only provided an affidavit from Richard Williams that described the DOC's efforts in searching for responsive information. Docket 114 at 13. Defendants do not provide a response to Scheetz's argument. Rule 30(b)(6) requires that the responding party produce a deponent. Here, defendants provided an affidavit that addressed topics 6-8, but neither Edson nor Dreiske was prepared to testify at their depositions on the topics. Thus, defendants failed to comply with Scheetz's Rule 30(b)(6) subpoena.

### III. Appropriate sanctions

Under Rule 37(c)(1), exclusion of "material that should have been provided in discovery responses" is automatic. 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2289.1 (3d ed. 1998)(citing to 146 Federal Rules Decisions 401 at 691-92). "But the courts have discretion in general about whether and how to impose sanctions under Rule 37." *Id.* Under Rule 30(d)(2), "[t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person

11

who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

At this time, the court will grant Scheetz's motion to strike to the extent that the court will not consider Summers' affidavit and supporting documents (Docket 111) in its decision on defendants' second motion for summary judgment. The court will reserve ruling on an adverse jury instruction, the exclusion of evidence at trial, and attorney's fees until the pretrial conference currently scheduled for Monday, December 11, 2017.

## CONCLUSION

Thus, it is

ORDERED that plaintiff's motion to strike (Docket 113) is GRANTED IN PART. The court will not consider the affidavit of Hunter Summers (Docket 111) and all included attachments in its ruling on defendants' second motion for summary judgment (Docket 109).

DATED November 21, 2017.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE
